UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 05-20859-CR-HUCK/BANDSTRA

UNITED STATES OF AMERICA,

    Plaintiff,

vs.

RAUL J. GUTIERREZ, *et al.*,

    Defendants.
_____/

## ORDER GRANTING THE REPUBLIC OF TRINIDAD AND TOBAGO'S MOTION TO DISMISS LOURDES GUTIERREZ'S THIRD-PARTY CLAIM WITH PREJUDICE

THIS MATTER comes before the Court on The Republic of Trinidad and Tobago's Motion to Dismiss Lourdes Gutierrez's Third Party Claim With Prejudice. (D.E. No. 830, filed Febuary 17, 2012). The Court has reviewed the parties' submissions, the relevant legal authorities, and is otherwise duly advised. For the reasons set forth below, the Republic of Trinidad and Tobago's Motion is granted.

### I. BACKGROUND

On November 7, 2006, Defendant Raul Gutierrez pled guilty to bank fraud and to conspiring to commit various forms of fraud. Plea Agreement ¶ 1 (D.E. No. 360). Under his plea deal, Defendant agreed to forfeit real property located at 12850 Red Road, Coral Gables, Florida (the "Red Road property"). The property was titled in the name of Inversiones Rapidven, S.A.—a Panama corporation headed by Mr. Gutierrez and his co-conspirator Richard Lacle. *Id.* at ¶ 9(a). On January 22, 2007, the Court entered a Preliminary Order of Forfeiture, which provided that all parties "having or claiming a legal interest in the property forfeited . . . must file a petition with the Court . . . ." Order at 7 ¶ 2 (D.E. No. 418).

Petitioner Lourdes Gutierrez—Mr. Gutierrez's ex-wife—filed an emergency petition at the eleventh hour, claiming that she had an interest in the Red Road property. *See* Third-Party Emergency Pet. of Lourdes Gutierrez (D.E. No. 445, filed Feb. 13, 2007). She alleged that the Red Road property was a marital asset in which she had a vested one-half interest. *Id.* at ¶¶ 7-8. She also claimed a vested interest of greater than one-half of the property's value since Mr.

1

Gutierrez allegedly failed to perform certain obligations under their marital settlement agreement. *Id.* The Red Road property has since been sold; thus, all those who have a valid legal interest in the property will receive a pro rata share of the sale proceeds.

On January 24, 2012, the Court dismissed Petitioner's Emergency Petition in part because the Red Road property was not a marital asset. *See* Order at 1 (D.E. No. 828). The Court allowed Petitioner's third-party claim to survive on the assumption that she had obtained a $535,000 judgment against Mr. Gutierrez. *See* Hr'g Tr. 41: 10-12, Jan. 23, 2012 (D.E. No. 829).

> The Court: Are you claiming now because you have a judgment that you're entitled to [the property]?
>
> Mr. Klock: Yeah.

Because the Republic of Trinidad and Tobago ("Trinidad and Tobago") expressed disbelief that Petitioner had obtained a judgment against Mr. Gutierrez, *id.* at 43:7—to which the Court responded it would be "real surprised" if she had not, *id.* at 43:13—the Court directed Trinidad and Tobago to confirm the existence of the state court judgment awarding Petitioner $535,000, *id.* at 44:15-17. Trinidad and Tobago dutifully obliged the Court's request and has come back empty-handed. *See* Trinidad and Tobago's Mot. Dismiss ¶ 4 (D.E. No. 830, filed Feb. 17, 2012) ("[Trinidad and Tobago] searched the Miami-Dade County Circuit Court docket in the matter *Gutierrez v. Gutierrez* []; the public records of Miami-Dade County; and the judgment lien database maintained by the State of Florida. No final judgment or judgment lien in favor of Ms. Gutierrez and against Mr. Gutierrez was found."). Trinidad and Tobago has thus renewed its efforts to dismiss Petitioner's third-party claim.

## II. DISCUSSION

Forfeited property does not always go to the United States' coffers. As here, third parties may intervene in a forfeiture proceeding and petition the court to adjudicate their interests in the property subject to forfeiture. When this happens, the district court's sole task is to "determine whether any third party has a legal interest in the forfeited property"—not to religitate whether the property is forfeitable. FED. R. CRIM. P. 32.2, Advisory Committee Note 2(b) (2000). 21 U.S.C. § 853(n) outlines the conditions a petitioner must satisfy to receive a share of the forfeited property. It directs the district court to amend a forfeiture order only when the petitioner establishes by a preponderance of the evidence that "it has a legal right, title, or interest in the property . . . ." 21 U.S.C. § 853(n)(6)(A). The petitioner must also establish that the legal right,

title, or interest "vested in the petitioner rather than the defendant or was superior to any right, title, or interest of the defendant at the time off the commission of the acts" giving rise to the forfeiture. *Id.* We look to state law to determine whether the petitioner has a legal interest in the forfeited property. *United States v. Shefton*, 548 F.3d 1360, 1364 (11th Cir. 2008) (citation omitted).

Whether Petitioner Lourdes Gutierrez has satisfied Article III's standing requirements is a threshold issue this Court must decide. If Petitioner is not in danger of suffering some threatened or actual injury as a result of the forfeiture proceedings then the Court does not have jurisdiction to adjudicate her claim. *See United States v. Weiss*, 467 F.3d 1300, 1308 (11th Cir. 2006). Trinidad and Tobago contends that because Petitioner has no legal interest or right to the proceeds from the Red Road property sale, she does not have standing under § 853(n). The Court agrees.

Even though forfeiture proceedings are criminal in nature, we analyze Trinidad and Tobago's motion the same way we do a "motion to dismiss a civil complaint under Federal Rule of Civil Procedure 12(b)." *United States v. Marion*, 562 F.3d 1330, 1342 (11th Cir. 2009). The Court thus accepts everything Petitioner says to be true and will dismiss only if she does not have standing or her petition fails to state a claim upon which relief may be granted. *Glover v. Liggett Group, Inc.*, 459 F.3d 1304, 1307 (11th Cir. 2006) (citation omitted).

Initially, Petitioner contended that she was entitled to a portion of the Red Road property because: (1) it was a marital asset—of which she was entitled to at least half; and (2) Mr. Gutierrez defaulted on a number of his obligations under the marital settlement agreement. Pet. ¶¶ 7-8. The Court has already determined that the Red Road property was not a marital asset. *See* January 24, 2012 Order at 1 (D.E. No.828). So the only remaining basis upon which Petitioner stakes her claim to the proceeds of the property sale is that Mr. Gutierrez owes her: "(1) back[-]owed mortgage payments in the amount of $535,035.52[;] (2) a replacement vehicle[;] (3) alimony since 2006[;] and (4) health insurance payments since 2006." Pet'r's Resp. 1 (D.E. No. 832, filed March 05, 2012). Petitioner's contention that Mr. Gutierrez's outstanding obligations under the marital settlement agreement provides her with standing is off the mark.

Under Florida Law, parties who enter into a marital settlement agreement "stand in the position of debtor and creditor." *Rosenberg v. Rosenberg*, 452 So. 2d 620, 621 (Fla. 3d Dist. Ct.

3

App. 1984) (per curiam). One party can force the other to comply with the agreement only by bringing an enforcement action in state court. If the state court finds noncompliance, the aggrieved party is generally entitled to a lien or money judgment. Unless and until then, however, the party seeking to enforce compliance with the settlement agreement cannot claim an interest in the ex-spouse's assets. The Florida Supreme Court made this clear in *Dickenson v. Sharpe*, 113 So. 638 (Fla. 1927).

There, the issue was whether "a decree for permanent alimony when filed as required by law constitutes a lien on the real estate of the husband against whom such decree is rendered." *Id.* at 639. The court answered "no" since "a decree granting permanent alimony does not become a specific lien on the husband's real estate unless so provided by statute." *Id.* The court further explained that the only means through which the former spouse could obtain a lien against the ex-husband's property is to "petition the court for an adjudication against the person against whom the decree [for alimony] was rendered." *Id.*; *see also Pipitone v. Pipitone*, 23 So. 3d 131, 136 (Fla. 2d Dist. Ct. App. 2009) (noting that "a trial court may award a money judgment for default" in making alimony payments). The Court finds no reason—nor has Petitioner provided us with one—not to apply *Dickenson*'s holding here.

Petitioner instead shuns *Dickenson* and contends that a final judgment of dissolution of marriage is enough to give her a right to a pro rata share of the proceeds from the Red Road property sale. Pet'r's Resp. at 1 (D.E. No. 481, filed March 09, 2007). She's incorrect. A judgment dissolving a marriage is not a substitute for a final money judgment. The former did not arm Petitioner with a lien on property owned or formerly owned by Mr. Gutierrez—as she contends it did. The judgment simply formalized the dissolution of their marriage and outlined the obligations they owe each other. To have standing here, however, Petitioner needs a state-court issued judgment for damages or a judgment lien against Mr. Gutierrez—not just a contingent claim for damages.[1]

---

[1] In her Response, Petitioner does not dispute Trinidad and Tobago's assertion that she has not obtained a final money judgment or judgment lien against Mr. Gutierrez. Instead, Petitioner relies solely on the Amended Final Dissolution of Marriage as the basis of her interest in the Red Road property. *See* Pet'r's Resp. Ex. A (Amended Final Judgment of Dissolution of Marriage). The Court has no choice but to view this continued reliance on the judgment of dissolution of marriage as a concession that Petitioner has not received a final money judgment or judgment lien against Mr. Gutierrez.

4

At most, Petitioner is a general creditor. But as even Petitioner conceded in a prior response: general creditors do not have "standing to intervene into any portion of the action which deals with what constitutes the estate to be forfeited." Pet'r's Resp. at 10 (D.E. No. 481). The reason for this is, as Petitioner aptly explains: "[a]lthough general creditors can claim an interest in their debtor['s] estate[], *they cannot claim an interest in any particular asset that makes up that estate*." *Id.* (emphasis added) (citing *United States v. Ribadeneira*, 105 F.3d 833, 836 (2d Cir. 1997) (per curiam)); *see also United States v. McCorkle*, 143 F. Supp. 2d 1311, 1320 (M.D. Fla. 2000) ("A general creditor has no 'vested' or 'superior' interest in particular assets forfeited unless he not only has secured a judgment against the debtor, but also has perfected a lien against a particular item."). The Court will not ignore these well-established principles of debtor-creditor law. Petitioner's third-party claim is thus dismissed with prejudice.

## III. CONCLUSION

After five years of litigation, Petitioner stands in the same shoes as when she started: without a money judgment or judgment lien against Mr. Gutierrez and thus without a right to a pro rata share of the proceeds from the Red Road property sale. At some point, litigation must come to an end—this case has now reached that point.

For the reasons stated above, it is hereby

ORDERED that the Republic of Trinidad and Tobago's Motion to Dismiss Lourdes Gutierrez's Third-Party Claim With Prejudice is GRANTED.

DONE AND ORDERED in Chambers, Miami, Florida, August 13, 2012.

_____
Paul C. Huck
United States District Judge

Copies furnished to:
All counsel of record

5